# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| SCOTT F SAVAGE,<br><br>             Plaintiff,<br><br>     v.<br><br>CITIBANK N.A., et al.,<br><br>             Defendants. | Case No.  14-cv-03633-BLF<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION**<br><br>[Re:  ECF 23] |

This lawsuit involves claims under the federal Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, as well as various state law claims, in connection with calls made to collect on a debt owed on a Macy's store credit card.  Plaintiff Scott Savage alleges that defendants Department Store National Bank ("DSNB"), FDS Bank ("FDS"), and Citibank N.A. ("Citi," collectively, with DSNB and FDS, "Defendants") repeatedly called him on his cellular phone in connection with the debt owed on the Macy's card despite two written requests that they stop.  Before the Court is Defendants' Motion to Compel Arbitration.  Def.'s Mot. 23.  The Court heard oral argument on February 5, 2015 and then stayed its ruling for 90 days so that the parties could attempt to settle the case through mediation.  On May 8, 2015, the parties informed the Court that they were unable to reach a settlement.  After careful consideration of the parties' respective written submissions and the oral argument of counsel, for the reasons stated herein, Defendants' Motion to Compel Arbitration is DENIED.

## I.    BACKGROUND

The underlying claims in this action involve debt collection activities concerning a Macy's store credit card issued to Plaintiff by defendant DSNB.  Compl. ¶ 1, ECF 1.  Plaintiff alleges on information and belief that "the department store Macy's, Inc. is a foreign business corporation

United States District Court
Northern District of California

doing business in California, which issues lines of credit through its financing arm [DSNB], which are then collected by its agents [FDS] and [Citibank]." *Id.* ¶ 29.  DSNB is also alleged to be a subsidiary of Citibank, N.A.  *Id.*  Plaintiff moreover alleges that "[a]t all times mentioned herein, each defendant and employee of defendant named [in the Complaint] was the agent or employee of each of the other defendants."  *Id.* ¶ 36.

In July 2013, Plaintiff stopped paying the Macy's credit card account.  *Id.* ¶ 9.  On July 10, 2013, he sent a letter to DSNB indicating that he could no longer pay the account and "requesting that it not telephone him anymore."[1]  *Id.* ¶¶ 2, 11.  DSNB and its agents, defendants FDS and Citi, did not cease their collection calls and continued to call him nearly every day, "sometimes three (3) to six (6) times a day."  *Id.* ¶ 12.  Plaintiff sent DSNB a second letter in September 3, 2013 requesting that it stop calling him.  *Id.* ¶ 14.  The calls continued unabated.  *Id.* ¶ 15.  Defendants also mailed letters to Plaintiff from August 2013 to January 2014 in an effort to collect on the "delinquent DSNB account."  *Id.* ¶ 16.  Plaintiff alleges that this course of conduct violated federal and state law and asserts claims under the California Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788 *et seq.*, the federal TCPA, as well as state common law claims for inclusion upon seclusion, and negligent training and supervision.

On November 14, 2014, Defendants moved to compel arbitration pursuant to arbitration provisions in cardholder agreements concerning not the Macy's card issued by DSNB, but rather two Sears cards issued to Plaintiff by Citi.  It is undisputed that Citi did not issue the Macy's card. Def.'s Mot. 1.

## II.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforceability and scope of an arbitration agreement.  9 U.S.C. §§ 1 *et seq.*  Under the FAA, a party seeking to invoke an arbitration agreement may petition the district court "which, save for such agreement, would have jurisdiction [to hear the case], for an order directing that such arbitration proceed in the manner provided for in

---

[1] Elsewhere in the Complaint, Plaintiff alleges that he "informed" DSNB as well as its agents, FDS and Citi that he could no longer pay and wished the phone calls would stop.  *Id.* ¶ 2.  It is not clear whether Plaintiff sent separate letters to FDS and Citi.

1   such agreement." 9 U.S.C. § 4; *see also Trompeter v. Ally Financial, Inc.*, 914 F. Supp. 2d 1067,

2   1071 (N.D. Cal. 2012).

3        A district court faced with a petition to enforce an arbitration clause engages in a limited

4   two-part inquiry: first, it determines whether the arbitration agreement is valid, and second, it

5   determines whether the agreement encompasses the claims at issue.  *See, e.g.*, *Mitsubishi Motors*

6   *Co. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 627-28 (1985); *see also Trompeter*, 914 F. Supp.

7   2d at 1071.  The FAA dictates that arbitration agreements are "a matter of contract," and "shall be

8   valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

9   revocation of any contract."  9. U.S.C. § 2.  Here, there is no dispute that the arbitration clause is

10   valid, only whether it pertains to the claims at issue in this lawsuit.

11        When determining whether the arbitration clause encompasses the claims at issue, "all

12   doubts are to be resolved in favor of arbitrability."  *Simula v. Autoliv*, 175 F.3d 716, 721 (9th Cir.

13   1999) (interpreting the language "arising in connection with" in an arbitration clause to "reach[]

14   every dispute between the parties having a significant relationship to the contract and all disputes

15   having their origin or genesis in the contract.").  Consistent with the text of the FAA, "courts must

16   'rigorously enforce' arbitration agreements according to their terms."  *Am. Exp. Co. v. Italian*

17   *Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S.

18   213, 221 (1985)).

19   **III.   DISCUSSION**

20        Defendants do not assert that Plaintiff's Macy's credit card agreement contained an

21   arbitration clause.[2]  Instead, Defendants contend that Plaintiff's claims are subject to arbitration

22   because they fall within identical arbitration provisions in cardholder agreements governing two

23   Sears credit cards issued by Citi.  The provision is bilateral and provides for binding arbitration

24   concerning: "All claims relating to your account, a prior related account, or our relationship . . .

25   including Claims regarding the application, enforceability, or interpretation of this Agreement and

26

27   ───────────────

28   [2] Defendants did not produce a copy of the card agreement that governs Plaintiff's Macy's card
    issued by DSNB.  The Court can only presume that the Macy's card agreement does not contain
    an arbitration provision.

United States District Court
Northern District of California

1    this arbitration provision."  Def.'s Mot. 4; Decl. of Elizabeth S. Barnette, ECF 25 Exhs. 1, 3, 6, 9.

2    The provision explains whose claims are subject to arbitration: "Not only ours and yours, but also

3    Claims made by or against anyone connected with us or you or claiming through us or you, such

4    as a co-applicant, authorized user of your account, an employee, agent, representative, affiliated

5    company, predecessor or successor, heir assignee, or trustee in bankruptcy."  *Id.*  Moreover, the

6    arbitration provision is to be interpreted "in the broadest way the law will allow it to be enforced."

7    *Id.*  These Sears card agreements are governed by South Dakota law.  Def.'s Mot. 8-9; Barnette

8    Decl. Exhs. 1, 3, 6, 9.

9         Defendants contend that Plaintiff's claims in this lawsuit—premised upon collection

10   activity in connection with a Macy's card issued by DSNB—fall within the scope of the

11   arbitration provision set forth in the Sears card agreements.  Def.'s Mot. 10-11.  As to the claims

12   against Citi, Defendants argue that the arbitration provision from the Sears card agreements

13   extends to all claims relating to "our relationship," meaning the relationship between Plaintiff and

14   the issuer of the Sears cards—Citi.  Because Plaintiff's claims concern unauthorized calls to his

15   cell phone number, and Plaintiff provided the same cell phone number to Citi in connection with

16   his Sears cards, Citi contends that Plaintiff's claims are based upon their "relationship" and

17   accordingly subject to arbitration.  Def.'s Mot. 10; *see also* Barnette Decl. ¶ 5.  Defendants

18   moreover contend that Plaintiff's claims against FDS and DSNB must be sent to arbitration

19   because Plaintiff has alleged that they are Citi's agents, and the Sears card agreements provide that

20   a cardholder's claims against the issuer's agents is also subject to arbitration.  Def.'s Mot. 11.

21        Because Plaintiff does not dispute the validity of the Sears card agreements, the Court's

22   task is limited to contract interpretation.  *See* Pl.'s Opp. 12-15, ECF 28.  Plaintiff moreover does

23   not appear to challenge Defendants' contention that South Dakota law governs the interpretation

24   of the Sears card agreements, though he has briefed his arguments under California law.  *See id.*

25   In any event, the Court agrees with Defendants that South Dakota has a substantial relation to the

26   parties and that the chosen state's principles of contract interpretation do not appear to be contrary

27   to any fundamental policy of California.  *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459,

28   466 (1992).  Even under South Dakota law, however, Defendants' interpretation of the Sears card

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1    arbitration provision is untenably broad.

2         It is axiomatic that arbitration agreements are matters of contract subject to ordinary

3    contract interpretation.  The South Dakota Supreme Court has summarized contract interpretation

4    thusly:

> The goal of contract interpretation is to see to it that the *mutual
> intent* of the parties is carried into effect.  The contract is to be read
> as a whole, making every effort to give effect to all provisions.
> When the words of a contract are clear and explicit and lead to no
> absurd consequences, the search for the parties' common intent is at
> an end.

9    *Nelson v. Schellpfeffer*, 2003 S.D. 7, ¶ 8 (2003) (emphasis added).  Likewise, "[a]rbitration under

10   the [FAA] is a matter of consent," *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford*

11   *Junior Univ.*, 489 U.S. 468, 479 (1989), and "the FAA's proarbitration policy does not operate

12   without regard to the wishes of the contracting parties," *Mastrobuono v. Shearson Lehman Hutton,*

13   *Inc.*, 514 U.S. 52, 57 (1995).  *See also AT & T Technologies, Inc. v. Commc'ns Workers of Am.*,

14   475 U.S. 643, 648 (1986).

15        Here, there is no basis for concluding that in accepting the Sears card agreements, Plaintiff

16   consented to arbitrate all claims that could ever arise between him and Citi.  Accepting

17   Defendants' interpretation that the "our relationship" language extends to any interaction between

18   Plaintiff and Citi would mean that one credit card agreement could be used to dictate the parties'

19   "relationship" *ad infinitum*, regardless of the subject matter of their future interactions.  That is an

20   absurd consequence.  For one, in collecting on the Macy's card account, Citi identifies itself as the

21   *servicer* on that card.  *See* Decl. of Scott F. Savage, ECF 28 Exh. 1.  There is no reason for a

22   consumer in Plaintiff's position to believe that he had a direct "relationship" with Citi regarding

23   the Macy's card issued by DSNB when Citi identified itself merely as a servicer of the account.

24   Moreover, there is no evidence that the Macy's card account and the Sears card accounts are in

25   any way related, other than that they were respectively issued to Plaintiff by DSNB and its alleged

26   parent Citi.  Finally, there is no evidence that when Plaintiff entered into an agreement with DSNB

27   regarding the Macy's card, he was aware or provided notice that such account might one day be

28   serviced by Citi.  Similarly, when entering into agreements on the Sears cards, Plaintiff had no

United States District Court
Northern District of California

notice that Citi might one day call him to collect on a different credit card issued by a different entity. It thus stretches the bounds of reason to interpret the "our relationship" language so broadly to encompass all other interactions with Citi, whether anticipated or not.

Defendants have not identified any cases in which the "our relationship" language has been interpreted so broadly. In all of the cases cited by Defendants where Citi successfully compelled arbitration, the applicable agreement was entered between the plaintiff and Citi as the card issuer. Def.'s Mot. 2-3, 7 (collecting cases). Defendants' arguments in this case are analogous to those advanced—and rejected—in *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253 (S.D. Cal. 2012). There, the court denied an effort to compel arbitration of TCPA claims based upon an arbitration agreement purporting to extend to "any and all disputes" between the plaintiff and Jiffy Lube. Plaintiff allegedly signed that agreement when he visited a Jiffy Lube location to get an oil change. The court reasoned that the "incredibly broad" provision could not possibly pertain to a "tort action arising from a completely separate" transaction. *Id.* at 1262-63. Indeed, the court noted the absurd result, as observed by the Seventh Circuit, if the scope of arbitration provisions is interpreted too broadly:

> [I]n *Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003), Judge Posner noted that if there were no limiting clause in the arbitration agreement at issue in that case, "absurd results [would] ensue," such that if a defendant murdered the plaintiff in order to discourage default on a loan, the wrongful death claim would have to be arbitrated.

*Id.* at 1263. The court ultimately concluded that the arbitration clause at issue must be interpreted to extend to claims that "arise out of or relate to" the contract that the plaintiff signed. *Id.*; *compare Coppock v. Citigroup, Inc.*, No. C11-1984-JCC, 2013 WL 1192632, at *5 (W.D. Wash. Mar. 22, 2013) (distinguishing *Jiffy Lube* and *Smith* because Citi, as card *issuer*, moved to compel arbitration of claims "relating to your account, a prior related account, or our relationship"). Likewise here, the Court concludes that the "our relationship" language in the Sears card agreements must be limited to the relationship created by those agreements—a relationship between Plaintiff and Citi as the card issuer, and not as the servicer or debt collector on any other unrelated card agreement.

6

Plaintiff has clearly limited this lawsuit to allegations regarding telephone calls to collect on his Macy's card account.  To be sure, this might have been a closer question had Plaintiff broadly alleged that Defendants called him on his cell phone without authorization.  Because Plaintiff provided the same cell phone number to Citi in connection with the Sears card accounts, there could be some ambiguity as to whether his claims arise in connection with those credit cards.  However, it is clear from the Complaint that the gravamen of Plaintiff's claims concern calls made in connection with the Macy's card issued by DSNB.  Plaintiff's declaration indicates that he received no further calls from Citi regarding the Sears cards.  Savage Decl. ¶ 4.  To the extent discovery may demonstrate that some of alleged calls were in fact made regarding the Sears cards, those calls are not the subject of Plaintiff's lawsuit here.  *See* Pl.'s Opp. 4 ("Savage brought claims *solely* regarding collection harassment relating to the Macy's account." (emphasis added)); *see also id.* ("Savage has not brought any claims relating to any conduct arising from the Citibank Sears account.").  As such, "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T*, 475 U.S. at 650 (citation and quotation marks omitted).

Because the Court has determined that the arbitration provision in the Sears card agreements do not extend to Plaintiff's claims in this lawsuit, the Court need not reach Defendants' argument that DSNB and FDS are also entitled to compel arbitration as Citi's alleged agents.  The Court notes only that Defendants' reliance on *San Diego Gas & Electric Company v. Mitsubishi Heavy Industries, Ltd.*, No. 13-cv-1726-BEN(KSC), 2014 WL 1245842 (S.D. Cal. Mar. 14, 2014), for that argument is unpersuasive.  *See* Def.'s Reply 4, ECF 29.  *San Diego Gas* concerned a party's allegation concerning its own agency relationship with other entities that were party to an agreement with a binding arbitration clause.  The court reasoned that "SDG &E cannot avoid this result by asking Defendants to prove SDG & E's own allegations.  Defendants are entitled to treat SDG & E's allegations in its Complaint as a judicial admission."  2014 WL 1245842, at *6.  Defendants here are attempting to use the converse of *San Diego Gas* to bind Plaintiff to his allegations about *Defendants'* relationship.  This does not work because Defendants are in the best position to prove their own relationship to one another and cannot simultaneously

7

deny agency and rely on Plaintiff's inartful allegation that they are each other's agents. *See Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1233 (9th Cir. 2013) (record evidence that defendants had disavowed agency relationship with retailer meant that retailer could not be bound by arbitration clause).

In any case, the Court has determined that the arbitration provision in the Citi-issued Sears card agreements do not extend to Plaintiff's claims concerning collection on a Macy's card issued by DSNB.  Defendant's Motion to Compel Arbitration must therefore be DENIED.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion to Compel Arbitration is DENIED.

The parties are hereby ordered to appear for an Initial Case Management Conference on **June 18, 2015 at 1:30 p.m**.  The parties shall submit a joint case management statement by **June 11, 2015**.

**IT IS SO ORDERED.**

Dated: May 12, 2015

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

8